UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. H., et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>MOUNT DIABLO UNIFIED SCHOOL DISTRICT,<br><br>　　　　　Defendant. | Case No. 16-cv-04308-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PLAINTIFF S.H.'S ATTORNEYS' FEES AND VACATING JANUARY 26, 2018 MOTION HEARING**<br><br>Re: Dkt. No. 44 |

## I.　INTRODUCTION

In this action, Plaintiff S.H. sought judicial review of an administrative decision of California's Office of Administrative Hearings ("OAH") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. The parties brought cross-motions for summary judgment and the Court ruled in favor of S.H., finding that the OAH had erred when it ruled in favor of Mt. Diablo Unified School District on two issues raised in the administrative proceeding and affirming the OAH's decision as to two other issues on which the OAH had found in favor of S.H. Docket No. 39. The Court further found that S.H. was entitled to reasonable attorneys' fees as the prevailing party. *Id*. at 33 (citing 20 U.S.C. § 1415(i)(3)(B)). Presently before the Court is S.H.'s Motion for Attorneys' Fees ("Motion"). **The Court concludes that the Motion is suitable for determination without oral argument and therefore vacates the hearing set for January 26, 2018 at 9:30 a.m. pursuant to Civil Local Rule 7-1(b).** For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND[2]

### A. Procedural Background

On July 31, 2015, S.H. and his mother ("Mother") moved to Concord, California, in the Mt. Diablo Unified School District ("MDUSD"). Administrative Record ("AR") 612. The previous year, he had attended ninth grade at Las Lomas High School ("Las Lomas HS"), in the Acalanes Union High School District ("Acalanes"). AR 605, 607. S.H. has been eligible for special education since he was three years old, and his most recent IEP prior to moving into to MDUSD was developed in connection with an annual IEP team meeting held by Acalanes on March 25, 2015 AR 607. Mother did not consent to that IEP, however. AR 610, 778.

In August 2015, S.H. began the school year at Orion Academy, where his Mother unilaterally placed him, but Mother also registered S.H. at Mt. Diablo High School prior to the commencement of the school year there. AR 612. Mother requested an IEP from MDUSD, and on October 14, 2015 MDUSD offered an interim IEP, drawing on the March 25, 2015 IEP and making some modifications. AR 141-142. Mother did not consent to the October 14, 2015 IEP and filed a due process hearing request with the OAH on October 22, 2015. AR 603. In the request, S.H. and Mother asserted that the October 14, 2015 IEP denied S.H. a free, appropriate public education ("FAPE") because MDUSD had completed only an interim IEP rather than a full IEP. AR 5. In doing so, they asserted, MDUSD failed to take into account the recommendations of Dr. Bernou, an expert retained by Mother who had submitted a neurological assessment recommending, among other things, that S.H. be placed at Orion Academy. AR 5. Mother and S.H. further asserted that S.H. had been denied FAPE because no general education teacher had participated in the IEP meeting. AR 5-6. S.H. and Mother proposed the following "Resolutions" in the due process request:

> 1) The District shall provide Student with an appropriate placement and related services;
> 2) The District shall reimburse Parent for tuition and travel to the private school placement;
> 3) The District shall provide Student with compensatory education

---

[2] A detailed description of the underlying facts of this case is included in the Court's summary judgment order, Docket No. 39.

> in all areas of need in the amounts to be proven at hearing and according to proof;
> 4. The District shall provide any and all other remedies deemed appropriate by the administrative law judge at the hearing on the matter.

AR 6.

On February 19, 2016, MDUSD made a formal settlement offer pursuant to 20 U.S.C. § 1415(i)(3)(D). Motion, Ex. 3. In the offer letter, MDUSD offered the following:

> The District will reimburse Parent for private educational expenses incurred at Orion Academy in the amount of $16,750 and related transportation costs (including mileage) through December 31, 2015 for services provided to Student. Reimbursement will be provided following receipt of proof of educational costs incurred and paid in the form of paid invoices accompanied by credit card receipts, cancelled checks, or electronic bank statements. The District will also reimburse reasonable attorney fees of not more than $10,000 for attorney's fees incurred related to OAH Case No. 201510931, based on receipt of a detailed attorney's fees statement reflecting fees incurred.

*Id*. The offer concluded with the statement, "If this offer is acceptable to your client, please advise us in writing and we will prepare a standard settlement agreement reflecting its terms, with customary waivers." *Id*.

On February 21, 2016, counsel for S.H. sent an email to counsel for MDUSD asking if the offer "require[d] a waiver of stay put." Motion, Ex. 4 (February 21, 2016 email from Natashe Washington to Lenore Silverman). Counsel for MDUSD responded that it did not, stating "I want to be very clear. This covers claims to date only. There is no agreement to Orion and no stay put." *Id.* (February 21, 2016 email from Lenore Silverman to Natashe Washington). On February 23, 2016, counsel for S.H. sent MDUSD a letter rejecting the offer because: 1) it "[did] not include all the substantive terms" and in particular, did not include the waiver of stay put MDUSD informed counsel was part of the offer in her February 21, 2016 email; 2) the offer only provided reimbursement up to December 31, 2015 even though Mother continued to make monthly payments to Orion; and 3) the amount of attorneys' fees was unreasonable because S.H. and Mother had already incurred $22,000 in attorneys' fees. Motion, Ex. 5.

The OAH hearing was conducted on March 1-3, 2016. AR 51. S.H. raised the following issues:

3

> Student's Issue I: Did Mt. Diablo commit the following procedural violations, which denied Student a free appropriate public education for the 2015-2016 school year:
>
> a. failing to make a formal, specific written offer of [free appropriate public education ("FAPE")] in the October 14, 2015 individualized education program document;
>
> b. failing to include any goals in the October 14, 2015 IEP document;
>
> c. only offering Student interim services in the October 14, 2015 IEP; and
>
> d. failing to have all required IEP team members present at the October 14, 2015 IEP meeting?
>
> Student's Issue 2: Did Mt. Diablo deny Student a FAPE in the October 14, 2015 IEP, designated as an interim IEP by Mt. Diablo, by failing to offer Student an appropriate placement?

AR 603-604. In Plaintiff's closing brief, he requested: 1) tuition for the entire school year at Orion, in the amount of $33,730; 2) the cost of transportation to Orion; 3) 100 hours of compensatory instruction in writing; 4) 50 hours compensatory instruction in math; and 5) all other remedies deemed appropriate. AR 126-127.

The OAH found in favor of S.H. on issues 1.a and 1.d and in favor of MDUSD on the remaining issues. AR 603-639. The OAH ordered MDUSD to provide S.H. with compensatory services in the form of 20 40-minute group sessions focusing on speech and language skills by a certified non-public agency to be selected by Mother. AR 637. The OAH further ordered that MDUSD would "hold an IEP team meeting specifically to consider Dr. Bernou's evaluation and pay for Dr. Bernou to attend the IEP [meeting]. [MDUSD] will ensure that all required team members are present at the meeting." AR 638. OAH denied all other requested relief. AR 638.

Following the OAH decision, MDUSD contacted Mother to arrange for a new IEP meeting, as ordered by OAH, but that meeting did not take place. *See* Motion, Ex. 10 (exchange of emails discussing possibility of convening June 2, 2016 IEP meeting); Reply at 9. Instead, on June 13, 2016, MDUSD offered to place S.H. in a magnet program at Concord High School for the extended year program and S.H. accepted that offer. Motion, Ex. 12. A subsequent IEP was completed by MDUSD on March 23, 2017and Mother consented to the IEP associated with that meeting. *See* Motion Ex. 12 Motion, Ex. 13. With respect to the compensatory speech and

United States District Court
Northern District of California

language sessions provided for under the OAH Order, Mother did not designate a provider and subsequently informed MDUSD that S.H. did not need these services because he was receiving them at his current placement. Cassin Decl., Ex. A.

### B. The Motion

Plaintiff asks the Court to award a total of $130,402.76 in attorneys' fees and costs, consisting of the following amounts: 1) $73,482.00 for attorneys' fees and costs incurred in the administrative proceeding; 2) $39,505.76 for attorneys' fees and costs incurred in this action through entry of judgment; and 3) and $17,415.00 in attorneys' fees and costs incurred in connection with the instant Motion. Notice of Motion at i. Plaintiff contends both the hours worked and the rates charged are reasonable and that no reduction in the lodestar amount based on the results obtained in this action is appropriate. Motion at 6-13. He also asserts that MDUSD's settlement offer prior to the hearing in the administrative proceeding (which Plaintiff rejected) does not justify capping attorneys' fees as of the date of that offer under 20 U.S.C. § 1415(i)(3)(E) because he was substantially justified in rejecting that offer. *Id*. at 3. In particular, he contends the offer was untimely, the terms of the offer were ambiguous and the amount offered in attorneys' fees and costs ($10,000) was insufficient. *Id*. at 3-6.

MDUSD contends Plaintiff's fees and costs should be capped from the date of its settlement offer under 20 U.S.C. § 1415(i)(3)(E) and that even if they are not, the Court should reduce Plaintiff's fees and costs in light if his limited success in this action. In particular, it argues that while Plaintiff technically prevailed in this action, he was not awarded the relief he has sought from the outset, namely, an award of his tuition and costs for his attendance at Orion Academy. MDUSD further argues that both the hourly rates charged and the time spent by counsel on this action are unreasonable and should be reduced substantially.

### III. ANALYSIS

#### A. Whether Plaintiff's Fees and Costs Should be Capped under 20 U.S.C. § 1415(i)(3)(D)

##### 1. Legal Standard

Under the IDEA, "[a]ttorneys' fees may not be awarded and related costs may not be

5

reimbursed . . . for services performed subsequent to the time of a written offer of settlement to a parent" when the following requirements are met:

> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D). As amended in 2009, Rule 68 requires that a settlement offer must be served "[a]t least 14 days before the date set for trial." Previously, Rule 68 offers were timely if they were served "more than 10 days" before trial began. *See* Fed. R. Civ. P., Comment, 2009 Amendment.

In Subsection E, there is an exception to the rule set forth in section 1415(i)(3)(D) which provides that "[n]otwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E).

### 2. Whether the Offer was Timely

Plaintiff contends MDUSD's settlement offer should have been made by February 18, 2016 rather than February 19, 2016 because the OAH hearing commenced on March 1, 2016. According to Plaintiff, under Rule 6 of the Federal Rules of Civil Procedure, which governs the computation of time, this interval was exactly ten days, rather than "more than 10 days" as required by the statute, and therefore was untimely. Plaintiff is incorrect.

The parties agree that Rule 6 governs the computation of time for the purposes of determining whether the offer was timely. Rule 6 provides, in relevant part, as follows:

> (a) **Computing Time**. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
>
> (1) **Period Stated in Days or a Longer Unit.** When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a).

Although Rule 6 is generally applied where a time period is calculated prospectively, starting from some triggering event, courts have also applied it to compute time periods under Rule 68, thus counting backwards from a trial date to determine the date by which an offer must be served. *See, e.g., Christopher Weiser v. Horace Mann Ins. Co., No.* CIV.A. 06-9080, 2009 WL 5194972, at *3 (E.D. La. May 15, 2009), aff'd sub nom. *Weiser v. Horace Mann Ins. Co.*, 394 F. App'x 66 (5th Cir. 2010) (concluding that under Rule 6, settlement offer was served more than 10 days before trial for purposes of Rule 68 where trial commenced on March 2, 2009 and offer was served on February 19, 2009); *U.S. ex rel. Silva's Excavation, Inc. v. Jim Cooley Const., Inc.*, 572 F. Supp. 2d 1276, 1280 (D.N.M. 2008). In this context, it is not clear whether the commencement of trial or the settlement offer is the event that "triggers the period." Likewise, where the offer is made prior to an administrative proceeding, it is not clear whether the settlement offer or the commencement of the administrative proceeding is the event that "triggers the period." Plaintiff contends the settlement offer is the triggering event under Rule 6 but cites no authority for that assertion. Either way, the result is the same, however, at least under the facts here.

If the triggering event is the day the settlement offer was made, February 19, 2016, that date is excluded, while the last day of the period, March 1, 2016, is included. Fed. R. Civ. P. 6(a)(1)(A) & (C). Because 2016 was a leap year, there were 29 days in February. Thus, the interval between the settlement offer and the administrative hearing was eleven days (in other words, "more than 10 days" as required under 20 U.S.C. § 1415(i)(3)(E)). Moreover, if the triggering event was the settlement offer, the last day of the period (March 1, 2016) fell on a Tuesday and not on a "Saturday, Sunday, or legal holiday" and so there is no need to adjust the end date under Rule 6(a)(1)(C). Similarly, if the administrative hearing was the triggering event,

7

March 1, 2016 would not be included but February 19, 2016 would. Again, the last day of the period did not fall on a "Saturday, Sunday, or legal holiday" because February 19, 2016 was a Friday. Accordingly, the Court concludes the offer was timely.[3]

### 3. Whether the Relief Finally Obtained Was More Favorable the Settlement Offer

A settlement offer under Section 1415(i)(3)(E) must also be more "favorable to the parents" than the "relief finally obtained" in order to preclude an award of fees incurred after the settlement offer. "[T]he comparison of the settlement offer versus the result of litigation must be made from the perspective of the parents." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 476 (9th Cir. 2015). *Id.* The Court concludes that the results obtained were more favorable than the offer by MDUSD.

As discussed above, the primary remedies requested by S.H. in both the administrative hearing and in the instant action were an "appropriate placement" and reimbursement for a full year of tuition and transportation to Orion Academy. Although MDUSD offered to pay a semester of Orion tuition, it did not offer any placement at all – at Orion or anywhere else – in the settlement offer. *See K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1118 (9th Cir. 2011) (holding that settlement agreement that agreed to pay tuition of private school where student had been unilaterally placed for a full school year but did not contain any provision making that school the student's placement did not make the private school the student's educational placement). Indeed, counsel for MDUSD expressly stated in an email to Plaintiff's counsel dated February 21, 2016, in response to a request for clarification as to waiver of stay put rights, that "there is no agreement to Orion and no stay put." Motion, Ex. 4.

On the other hand, both the OAH and this Court ordered that a new IEP be completed to

---

[3] The Court notes that the result in *Christopher Weiser v. Horace Mann Ins. Co.*, No. CIV.A. 06-9080, 2009 WL 5194972, at *3 (E.D. La. May 15, 2009) is consistent with the conclusion of the undersigned. There, as in this case, the offer was served on February 19. Although the trial in that case did not commence until March 2 (whereas here the administrative hearing commenced on March 1), the relevant events in that case occurred in 2009, which was not a leap year. Because there were only 28 days in February in that year (as opposed to 29 days in 2016), the interval in *Weiser* is identical to the interval in this case.

United States District Court
Northern District of California

remedy the deficiencies of the prior IEP, thereby requiring MDUSD to revisit the question of what placement was appropriate for S.H. The response of MDUSD to OAH's order was to make a new offer of placement that Mother agreed was, in fact, appropriate. *See* Motion, Ex. 11. Although MDUSD argues that the OAH's order was merely a "catalyst" for the new offer of placement, Opposition at 25, the court disagrees.

In *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, cited by MDUSD in support of its position, the Supreme Court held that a party was not a prevailing party for the purposes of fee-shifting provisions in the Fair Housing Amendments Act and of the Americans with Disabilities Act where the defendant voluntarily changed its behavior in response to a lawsuit in which there had been no judgment or court order that in any way obligated the change in behavior. 532 U.S. 598, 605 (2001). The Court found that in the absence of any "judicial imprimatur on the change" in conduct, the plaintiff had not "prevailed" in the sense that word is used in the relevant fee-shifting provisions even though the lawsuit resulted in a change in conduct on the part of the defendant. *Id*. That is not the situation here. The OAH had ordered MDUSD to conduct a new IEP and the communications form MDUSD to Mother were clearly in response to that order. *See* Motion, Ex. 10. Further, to the extent that MDUSD's subsequent placement offer may have rendered moot the relief ordered by OAH (and this Court), the Court finds no authority that suggests that Mother was required to doggedly proceed with the IEP process that was ordered by the OAH in order to preserve the right to recover attorneys' fees as a prevailing party. Nor do the goals of the IDEA support such a result.

### 4. Whether Rejection of the Offer Was Substantially Justified

Plaintiff offers two reasons why his rejection of the MDUSD settlement offer was substantially justified: 1) the attorneys' fees were lower than those that had actually been incurred as of the date of the offer; and 2) the offer was ambiguous as to the waiver of stay-put. The Court finds that the first argument is persuasive and does not reach the second argument.

A number of courts have held that under Section 1415(i)(3)(D), a party may be substantially justified in rejecting a settlement offer that includes only nominal attorneys' fees. *See e.g., Dicks v. D.C.*, 109 F. Supp. 3d 126, 131 (D.D.C. 2015) (holding that plaintiff was

substantially justified in rejecting a settlement offer that included only $400 in attorneys' fees even though counsel had expended 33.5 hours on the case as of the date of the offer); *Brighthaupt v. D.C.,* 36 F. Supp. 3d 1, 9 (D.D.C. 2014) (holding that plaintiff's rejection of settlement offer was substantially justified where District offered only $300 for 15.4 hours of attorney time); *Hawkins v. Berkeley Unified School District*, No. C-07-4206 EMC, 2008 U.S. Dist. LEXIS 94673 (N.D. Cal. Nov. 20, 2008) (holding that plaintiff's rejection of settlement offer was substantially justified where District offered "nominal" attorneys' fees of $500 even though plaintiff had already incurred over $9,000 in attorneys' fees). The focus of these courts has been upon the "careful balancing" that the IDEA requires between the need to "ensure that counsel in these cases are fairly compensated so that they will continue to take these cases and provide parents with the qualified counsel they need," on the one hand, and "the fact that municipal budgets for education are finite." *Brighthaupt*, 36 F. Supp. 3d at 9.

As the court in *Brighthaupt* explained, "[a]n unreasonable offer does not advance [the] goals [of the IDEA] and it would be a pernicious and self-defeating interpretation of the IDEA to say that any offer of fees, no matter how unreasonable, must be accepted at the risk of losing all compensation from the date the settlement offer was made until the date the case is concluded." *Id*. The court in that case concluded that under the IDEA, "an offer of a mere pittance in attorney's fees does not trigger that section of the statute that precludes an award of attorney's fees for time spent on the case after the settlement offer was made if the plaintiff ultimately secures no more relief that that which was originally offered." *Id*.; *see also Dicks*, 109 F. Supp. at 131 ("A settlement offer that compensates counsel for a mere fraction for its efforts deters parents from exercising their due process rights and, as such, is inimical to the IDEA's purpose"). The *Brighthaupt* court cautioned, however, that "a sincere and responsible offer, premised on an expectation of what plaintiffs' counsel may receive . . . should cause counsel to think very hard about rejecting it even if it is not all that counsel hope to achieved by prosecuting a fee petition in this Court." *Id*.

The question before the Court is whether MDUSD's offer of $10,000 in attorneys' fees was an "unreasonable offer" that does not trigger section 1415(i)(3)(D) or instead, is a "sincere

10

and responsible offer" even though less than counsel would have hoped to achieve. The Court concludes that the offer falls in the former category. While the fees offered here are not as low as those offered in the cases discussed above, MDUSD does not dispute that it made no effort to learn the amount of attorneys' fees counsel had incurred as of the date of the offer. Nor is there any evidence in the record suggesting that MDUSD came up with the figure in the offer based on its expectation of what Plaintiff's counsel was likely to receive if Plaintiff prevailed. Further, MDUSD offered less than half the fees actually incurred if the amount stated by Plaintiff is taken at face value.[4] Given the IDEA's goal of encouraging counsel to represent plaintiffs in meritorious challenges to school districts' policies and practices, the Court concludes that Plaintiff was substantially justified in rejecting MDUSD's settlement offer.

### 5. Conclusion

Because MDUSD's settlement offer was not more favorable than the results actually obtained, and because Plaintiff's rejection of the settlement offer was substantially justified, Plaintiff's attorneys' fees are not cut off after February 19, 2016.

### B. Calculation of Reasonable Fees

#### 1. Legal Standard

In determining the amount of reasonable fees, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) (holding that "attorney's fees awarded under 20 U.S.C. § 1415 are governed by the standards set forth by the Supreme Court in *Hensley* and its progeny"). There is "[a] strong presumption" that this "lodestar" amount represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986),

---

[4] Even calculating fees using the rates for Washington and Kim awarded by Judge Tigar in a 2013 case, *G. R. v. Brentwood Union Sch. Dist.,* No. 12-CV-06326-JST, 2013 WL 3369259, at *4 (N.D. Cal. July 5, 2013) (awarding Washington's fees at a rate of $325/hour and Kim's fees at a rate of $250/hour), and using the time reflected on the timesheet provided in support of the Motion (51.5 hours for Washington and 4.7 hours for Kim up to and including February 19, 2016), the lodestar amount of fees actually incurred would have been $17,912.50, substantially more than MDUSD offered, further supporting the conclusion that MDUSD's offer was not a sincere and responsible offer.

11

supplemented, 483 U.S. 711 (1987).

"The product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id*. Thus, where a litigant presents multiple claims, fees should not be awarded for work on claims upon which the litigant did not prevail if those claims are unrelated to the claims upon which the litigant did prevail. *Id*. at 434-435. Alternatively, in cases that involve only a single claim, or where all of the claims are based on a common core of facts or related legal theories, courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. at 435; *see also Aguirre*, 461 F.3d at 1121 (holding that *Hensley*'s "degree of success" test applies in IDEA cases and noting that success need not be limited to money awards where parents have achieved other "tangible results" such as "a change in policy or establishing a finding of fact") (quoting *Wilcox v. City of Reno*, 42 F.3d 550, 555 (9th Cir. 1994)).

### 2. Plaintiff's Lodestar

#### a. Hourly Rates of Counsel

Plaintiff requests that fees for attorney Natashe Washington be awarded at the rates of $430[5] an hour for work in the administrative proceeding and $450 an hour for work in the instant action. Motion at 7 & Ex. 6 (Washington Declaration) ¶ 7. Plaintiff requests that fees for attorney Hee Kim be awarded at the rate of $300 an hour in the administrative proceeding, $320 per hour for work on the instant action in 2016 and $325 per hour in this action in 2017. Motion at 8 & Ex. 9 (Kim Declaration) ¶ 9. As discussed further below, the Court concludes that Plaintiff is entitled to fees only in the administrative proceeding because of his limited success in this action. Therefore, the Court addresses only the rates sought for work in the administrative proceeding by Washington and Kim. The Court finds that the rate sought for Kim to be reasonable but reduces somewhat the rate for Washington.

---

[5] Although the Motion states that Plaintiff is seeking $430 an hour for Washington's work in the administrative proceeding, the timesheets provided in Exhibit 1 reflect a rate of $410 an hour.

Plaintiff offers two declarations from special education attorneys who practice in the San Francisco Bay Area, Jean Murrell Adams and Lajoyce Porter, to establish the reasonableness of the rates requested for Washington and Kim. Motion, Exs. 7 (Adams Decl.) & 8 (Porter Decl.). Adams graduated from law school in 1986 and held various litigation positions, including as a law clerk for a federal bankruptcy judge, as a litigator in the bankruptcy department of Jeffer Mangels, Butler & Marmaro, as a litigator in Sony Pictures' litigation department and as the head of the litigation department at Dream Works. Motion, Ex. 7 (Adams Decl.) ¶¶ 12-14. She began practicing special education law in 2002, when she founded her own firm devoted to representing children with special needs, and her firm has represented over 2000 low-income children in administrative proceedings in California and Nevada. Motion Decl., Ex. 7 (Adams Decl.) ¶ 2. Adams herself has handled "over a dozen" cases that involved hearing officers and administrative law judges and over ten "special education and fee motion cases in" federal district courts; she was also lead counsel in "several special education appeals before the Ninth Circuit." *Id.* ¶ 3. Adams states that she charges $450 an hour for work at the administrative level and $475 an hour for work in federal court. *Id.* ¶ 2. She states that Washington's rates are "well within the reasonable range of the currently prevailing rates of the special education law community." *Id.* ¶ 6. She further states that an associate at her firm with a "concomitant number of years' experience" as Kim bills between $325 and $375 an hour and on that basis concludes that Kim's requested rates are reasonable. *Id.* ¶ 8.

Porter was admitted to practice law in California in 2002 and has been practicing special education law since 2006. Motion, Ex. 8 (Porter Decl.) ¶ 1. She states that she charges $475 an hour. *Id.* ¶ 3. She states that the rates charged by Washington are "lower than the prevailing rate." *Id.* ¶ 4. She further states that an associate at her firm with a "concomitant number of years' experience" as Kim bills between $275 and $325 an hour and on that basis concludes that Kim's requested rates are reasonable. *Id.* ¶ 8.

It is Plaintiff's burden to produce satisfactory evidence of the prevailing rate in the area. *Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015). As to Washington's rate, the Porter and Washington Declarations are insufficient to meet that burden.

13

Although both state that Washington's rates are in line with prevailing rates, those conclusory statements do not carry a great deal of weight. *See id.* ("That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are. That is especially true when the opinions are expressed by attorneys whose own professional interests might motivate them to favor higher rates."). Further, the rates charged by Porter and Adams do not support these statements. Both Porter and Adams have significantly more experience in the practice of special education law than Washington, who began to practice special education law in 2009, and yet they charge hourly rates that are only slightly higher than the rates requested for Washington.[6]

Further, cases decided in this District support the conclusion that prevailing rates for attorneys with experience commensurate to Washington's are lower than those claimed here. As noted above, in 2013, Judge Tigar awarded Washington (who at the time had five years special education experience) an hourly rate of $325, noting that the prevailing rate in the San Francisco Bay area for attorneys with seven years special education experience was $350 an hour. *G. R. v. Brentwood Union Sch. Dist.,* No. 12-CV-06326-JST, 2013 WL 3369259, at *4 (N.D. Cal. July 5, 2013). And in *LaToya A. v. San Francisco Unified Sch. Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at *11 (N.D. Cal. Jan. 28, 2016), Judge Beeler concluded that a reasonable rate for Adams (who has more experience than Washington in the field of special education law, as discussed above) was $410 an hour, rejecting her request for a rate of $450 an hour. Judge Beeler noted that Adams had not cited to "any instances where a court found $450 to be a reasonable rate for the practice of special-education law in this or any other District." *Id*. at *12. Similarly, Plaintiff has not pointed to any case in this District in which a court has found $430 an hour to be a reasonable

---

[6] In the reply brief, Plaintiff states that it is "unfathomable how Ms. Washington's high-profile litigation experience for 10 (ten) years prior to commencing her Special Education practice is completely disregarded." Reply at 6. While that experience may have some bearing on what constitutes a reasonable rate, Washington has not cited any evidence suggesting that this prior experience in a foreign jurisdiction and in an entirely different area of law makes her claimed rates reasonable. The Court notes that Adams too had a long and illustrious career as a litigator (approximately 16 years) before taking up special education law. Thus, even if the Court considers experience outside of the field of special education, the evidence offered by Plaintiff reflects that Adams has many years more legal experience than Washington.

14

rate for the practice of special education law.

Finally, Washington submitted a sworn declaration in the *LaToya* case in support of Adams's fee request stating that Washington's own usual and customary rate was $410 an hour. *See* Case No. 15-4311, Docket No. 6-5, ¶ 8. That declaration was filed on September 21, 2015. Indeed, it is consistent with the contemporaneous time sheets filed in support of the instant motion, *see* Motion, Ex. 1, which reflect that Washington's hourly rate was $410, not the rate that she now seeks for work on the administrative proceeding ($430). As the bulk of the hours billed in the administrative proceeding were billed in 2015, the Court finds no justification for awarding a higher rate for that work. For these reasons, the Court concludes that Washington's fees should be awarded at a rate of $410 an hour.

On the other hand, both Porter and Adams state that associates with commensurate experience in their firms bill at rates between $325 and $375 (Adams's firm) and $275 and $325 (Porter's firm). Motion, Ex. 7 (Adams Decl.) ¶ 8; Motion, Ex. 8 (Porter Decl.) ¶ 6. Based on this evidence, the Court finds the rate charged by Kim for work in the administrative proceeding ($300 an hour) to be reasonable.

### b. Time Billed

The timesheets offered by Plaintiff reflect that Washington and Kim expended a total of 196.7 hours in the administrative proceeding. Motion, Ex. 1. Of this time, 65.9 hours was billed by Kim and 130.8 was billed by Washington. The Court concludes that this time requires reduction on the following grounds.

First, Plaintiff has included time entries for certain purely clerical tasks in the fee request. In particular, Plaintiff seeks fees for .5 hours expended by Washington on February 18, 2016 to draft a table of contents and notice of evidence. Motion, Ex. 1. In addition, Plaintiff seeks fees for .2 hours of Washington's time for review of certified mail receipts, billed on February 26, 2016. "[H]ours billed for administrative tasks are not compensable." *G. R. v. Brentwood Union Sch. Dist.*, No. 12-CV-06326-JST, 2013 WL 3369259, at *4 (N.D. Cal. July 5, 2013) (citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)). Therefore, the Court excludes this time from its

calculation of the lodestar.[7]

Second, Plaintiff bills excessive time for the drafting of subpoenas. Specifically, Plaintiff requests 1.9 hours of Washington's time, billed on February 14 and 15, 2016, for drafting subpoenas. *See* Motion, Ex. 1. MDUSD argues this time is excessive because there were only two witnesses listed on the notice of witnesses for the administrative hearing and Plaintiff's counsel used form subpoenas for those witnesses. Opposition at 22. Plaintiff does not dispute that form subpoenas were used, but counters in the reply brief (without a supporting declaration) that counsel actually prepared *six* subpoenas on February 14, 2016. Reply at 8. The next day, counsel apparently changed her mind and decided to call only two of those witnesses at the hearing. *Id.* Even if attorney argument constituted admissible evidence, Plaintiff fails to explain why, in the absence of some change in circumstances, it is reasonable to bill for subpoenas that counsel drafted and then decided were unnecessary. The Court therefore reduces Plaintiff's time by 1.5 hours of Washington's time.

MDUSD also argues that Plaintiff seeks excessive time for inter-office conferences between Washington and Kim. The Court agrees. It is Plaintiff's burden to show that inter-office meetings are not excessive or duplicative. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (given "[counsel's] failure to provide a persuasive justification for the intra-office meetings, the district court did not err in finding the intra-office conferences to be unnecessary and duplicative"); *G. R. v. Brentwood Union Sch. Dist.*, No. 12-CV-06326-JST, 2013 WL 3369259, at *4 (N.D. Cal. July 5, 2013) (excluding time billed by Kim for inter-office conferences with Washington on the basis that the plaintiff did not show that these hours were not unnecessary or duplicative). Here, Plaintiff's counsel seek 3.1 hours of Washington's time for two meetings with Kim, on February 16, 2016 (1.1 hours) and February 18, 2016 (2 hours) to discuss the upcoming administrative hearing. Motion, Ex. 1. In addition, on February 24, 2016, another time entry for 2.2 hours includes time for "review of District binder and discussion of same with HK re use of

---

[7] The Court notes that in the reply brief, Plaintiff did not respond to MDUSD's challenges to these time entries.

evidence in Student's case."[8] *Id*. Finally, on February 29, 2016 Washington billed 2.3 hours for "Meeting with HK re trial strategy and witness testimony to prove issues." *Id*. These entries total 7.6 hours of meetings between Washington and Kim in connection with the OAH hearing. Plaintiff states in the Reply that this time was "necessary to design and construct trial strategy," and points out that Kim's time for these meeting is not included in the fee request. Reply at 7. Nonetheless, the Court concludes that a reasonable amount of time for these meetings would have been 4 hours and therefore reduces the lodestar by 3.6 hours of Washington's time.

Based on the above, the Court concludes that the reasonable time spent by Washington in the administrative proceeding is 125 hours and by Kim is 65.9 hours. Using the rates of $410 an hour for Washington and $300 an hour for Kim, the lodestar amount for attorneys' fees incurred in the administrative proceeding is $71,020.

### C. Whether the Court Should Reduce Plaintiff's Award Based on the Results He Obtained in this Action

MDUSD asks the Court to reduce the lodestar amount based on Plaintiff's failure to obtain the primary remedy sought in both the administrative proceeding and in the instant action. In particular, it asks the Court to deny all fees for time expended in this action and reduce fees for the administrative proceeding by 50% based on Plaintiff's limited success. Opposition at 25-26. While the Court declines to reduce Plaintiff's fees in the administrative proceeding, it agrees with MDUSD that fees in the instant action should not be awarded because Plaintiff obtained no meaningful relief by pursuing this litigation.

"[E]ven where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith," where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Supreme Court in *Hensley* explained that "there is no precise rule or formula" for determining what deduction is appropriate: "The district court may attempt to identify specific hours that should be eliminated,

---

[8] Because this entry is block-billed, it is impossible to determine how much of this time was devoted to reviewing the binder and how much was spent discussing the material. Therefore, the Court assumes that the entire time entry was devoted to discussion between Kim and Washington.

17

or it may simply reduce the award to account for the limited success." *Id*. at 436-437. The Court concludes that exclusion of all fees incurred in this action is warranted because by the time the action was filed, on July 29, 2016, MDUSD had already offered a placement that Mother had accepted, thus obviating the need to hold a new IEP meeting to remedy MDUSD's past errors. Thus, the only reason to pursue the instant litigation was to recoup the Orion tuition that the OAH declined to award. Not only did Plaintiff fail to obtain that relief but his counsel did not even attempt to demonstrate that such relief was warranted.

As the Court explained in its summary judgment order, "[w]here parents have unilaterally placed a child with a disability in a private school, reimbursement for the cost of enrollment may be awarded "if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment *and* that the private placement is appropriate." Summary Judgment Order at 29 (quoting 34 C.F.R. § 300.148) (emphasis added). In its decision, the OAH explained at length the reasons for its conclusion that Plaintiff failed to demonstrate that Orion was an appropriate placement. *Id*. Yet Plaintiff "made no meaningful effort in the motion papers (including the supplemental brief requested by the Court to address the appropriate remedy in this case) to challenge the OAH's findings as to the appropriateness of the Orion placement." *Id*. Given that such a showing was a prerequisite for obtaining tuition reimbursement, counsel's failure to even attempt to address the problems identified by the hearing officer as to the evidence offered in the administrative proceeding to demonstrate that Orion was an appropriate placement was a serious shortcoming. As a result, the remedies available to the Court were limited and the relief the Court awarded appears to have been of little or no value to Plaintiff. While fee awards are intended to offer an incentive for attorneys to pursue meritorious IDEA claims, the instant litigation accomplished virtually nothing for Mother while costing MDUSD significant resources. Therefore, the Court concludes that an award of attorneys' fees for pursuing the instant action does not further the goals of the IDEA and exercises its discretion to deny attorneys' fees and costs incurred in the instant litigation.

### D. Costs

Plaintiff seeks $706.26 for expenses incurred in this action. For the same reasons the

18

Court declines to award attorneys' fees incurred in this action it also declines to award expenses. Plaintiff has not identified any expenses incurred in the administrative proceeding. Nor has he provided any documentation reflecting expenses incurred in the administrative proceeding. Therefore, the Court does not award any costs.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. The Court awards attorneys' fees incurred in the administrative proceeding in the amount of $71,020.

**IT IS SO ORDERED.**

Dated: January 23, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge